# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LATU I. HAMPTON,

                    Plaintiff,

v.                                                          Case No. 22-CV-401-JPS

CHRYSTAL MELI, BRIAN TAPLIN,
ROBERT J. MARTIN, and MARY A.
MOORE,                                                      **ORDER**

                    Defendants.

## 1.    INTRODUCTION

Plaintiff Latu I. Hampton ("Hampton"), a prisoner representing himself, proceeds on Eighth Amendment deliberate indifference claims against Defendants Chrystal Meli ("Meli"), Brian Taplin ("Taplin"), Robert J. Martin ("Martin"), and Mary A. Moore ("Moore"). ECF No. 14 at 3 (screening order). Defendants allegedly failed to house Hampton in a lower housing tier at Waupun Correctional Institution ("Waupun") when his ankle was injured and he was using crutches. *Id.*

When the events alleged in this action occurred, Meli, Taplin, and Moore (together for purposes of this Order, the "State Defendants") were employees of the Wisconsin Department of Corrections ("DOC"), all assigned to work at Waupun. ECF No. 44 at 2–4. Martin was employed by a third-party staffing service and assigned to work at Waupun. ECF No. 56 at 1–2. The State Defendants moved for summary judgment on Hampton's claims. ECF No. 42. Martin filed his own motion for summary judgment. ECF No. 51. Both motions are fully briefed. ECF Nos. 43, 52, 70, 71, 72. For the reasons stated herein, both motions will be granted.

## 2. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (citing Fed. R. Civ. P. 56(a) and *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014)). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016) (citing *Burritt v. Ditlefsen*, 807 F.3d 239, 248 (7th Cir. 2015)). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255).

Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994) (citing *Anderson*, 477 U.S. at 248–49). But simply

"denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill 2018) (quoting *Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 854 (N.D. Ill. 2015)).

## 3.    RELEVANT FACTS[1]

### 3.1    Parties

Hampton is an inmate in the custody of the DOC, housed at Waupun both currently and at the times relevant to his claims in this lawsuit.

At the times relevant to this case, Moore was a Registered Nurse and worked as an Advanced Practice Nurse Practitioner ("APNP") at Waupun, where she provided medical services to inmates at Waupun's Health Services Unit (the "HSU"). As an APNP, Moore had authority to make diagnoses, order tests, and prescribe treatments and medications.

At the times relevant to this case, Taplin was a Registered Nurse and worked as a Nurse Clinician 2 at Waupun. As a Nurse Clinician, Taplin was responsible for providing skilled nursing care to Waupun inmates, including performing patient assessments and treatments, assisting the physician in providing medical services, managing medications, providing emergency care, and maintaining medical records.

---

[1]This recitation of facts is primarily drawn—with minor, non-substantive edits—from the parties' agreed upon statements of fact. ECF Nos. 44 and 56. Internal citations therein have been omitted for brevity. Some undisputed facts have been omitted as repetitive and/or ultimately immaterial. When the Court draws facts from the parties' separate sets of itemized disputed facts or from other areas of the record, it so notes with citations.

At the times relevant to this case, Meli was the Nursing Supervisor and HSU Manager at Waupun. As HSU Manager, Meli provided overall administrative support and direction of the unit, but typically did not have direct medical care contact with inmates. Instead, medical care was provided by HSU nursing staff and advanced care providers and managed by the primary care physician. As HSU Manager, Meli did not have the authority to override the treatment decisions of physicians, nurse practitioners, and/or physician assistants, and she could not prescribe treatments, order tests, or diagnose patients.

At the times relevant to this case, Martin was also an APNP. He was employed with a temporary medical staffing agency pursuant to an agreement dated April 5, 2019. Under the agreement, Martin provided certain medical services at the Waupun HSU. Like Moore, he was permitted to make diagnoses, order tests, and prescribe treatments and medications. According to Martin, Moore was the primary Nurse Practitioner assigned to Hampton.

### 3.2 Hampton's Medical Treatment Prior to July 16, 2019

On May 25, 2019, Hampton was brought to the HSU after he fell down the stairs. He was seen by Nurse Vick with complaints of a headache and pain in his right leg from his knee to his foot. Nurse Vick examined him and did not see any swelling or marks on Hampton's right leg, knee, or foot. She gave him an ice bag, ordered naproxen and Tylenol, and placed Hampton on a lower bunk restriction for seven days. Medical records do not reflect that any lower tier restriction was discussed, requested, or imposed at this time. *See* ECF No. 46-1 at 19. Nurse Vick is not a party to

Case 2:22-cv-00401-JPS   Filed 03/13/24   Page 4 of 23   Document 75

this lawsuit, and none of the Defendants were present during this encounter.

On May 28, 2019, Hampton was seen again in the HSU by Dr. Jeanpierre related to the same incident of falling down the stairs. Hampton stated that he twisted his right ankle when he fell and complained of right ankle pain and a headache. Dr. Jeanpierre examined Hampton and reported that his right ankle revealed some swelling on the lateral malleolus (the bone on the outside of the ankle joint) and that Hampton walked with a limp. Dr. Jeanpierre ordered a splint (later described as a lace-up ankle brace) for Hampton and an x-ray of his right ankle. The x-ray showed no radiographic evidence of an acute fracture and no dislocation. Dr. Jeanpierre is not a party to this lawsuit, and none of the Defendants were present during this encounter.

On July 3, 2019, Hampton reinjured his right ankle while playing basketball. He saw Nurse Ahlborg in the HSU for the reinjury. Hampton arrived at the HSU wearing the splint/brace he had earlier been ordered. Nurse Ahlborg placed Hampton on crutches, gave him an ice bag and bandage wrap, and instructed him to rest and elevate his right foot whenever possible. Nurse Ahlborg is not a party to this lawsuit, and none of the Defendants were present during this encounter.

On July 5, 2019, Hampton saw Nurse Block in the HSU for a re-check of his right foot and ankle. Nurse Block is not a party to this lawsuit, and none of the Defendants were present during this encounter. On examination, Nurse Block did not observe any obvious abnormality to

Hampton's foot or ankle. She indicated that she was going to check with his provider to see if an x-ray would be necessary.

During this encounter, Nurse Block asked Hampton about the position of his cell on the cell hall; he informed Nurse Block that he was on the second tier. Nurse Block asked Hampton if he wished to stay on the second tier in the cell hall. ECF No. 46-2 at 3. The parties dispute what happened next.

Hampton's medical records, the authenticity of which he has not disputed, reflect that he told Nurse Block that he was "okay" with being on the second tier and that he "d[id] not need to move cells." ECF No. 46-1 at 14. Hampton, on the other hand, maintains that he "told Nurse Block that [he] wanted to move off the second floor to the bottom floor." ECF No. 45 at 1 (quoting Hampton deposition transcript, ECF No. 46-2 at 3); *see also id.* at 2–3 (Hampton maintaining that "[b]etween July 3 and July 16, 2019," and specifically "[o]n July 5, 2019," he asked Nurse Block to be moved and was denied).[2] Hampton's medical records reflect neither him requesting to be moved to the bottom tier nor Nurse Block denying any such request during this appointment. Hampton also states that "[w]hen [he] asked about getting moved to the bottom tier," Nurse Block refused to do so "because she said that they had people operate on stairs before with crutches so they didn't want to make a big deal of it . . . ." *Id.* (quoting ECF No. 46-2 at 3).

_____

[2] Martin also acknowledges that whether Hampton asked to be moved and was denied is a disputed fact. ECF No. 55 at 1.

Case 2:22-cv-00401-JPS    Filed 03/13/24    Page 6 of 23    Document 75

Hampton's medical records do not reflect Nurse Block making such a statement during this appointment.

Hampton's medical records reflect that Nurse Block ordered that he receive his meals in his cell for one week due to using crutches. ECF No. 46-1 at 14. Hampton states that he "did not receive meals in [his] cell until after the fall on July 16." ECF No. 45 at 1.[3]

On July 8, 2019, Hampton saw Nurse York—not a party to this lawsuit—in the HSU for the same reinjury. Hampton came into the appointment on crutches and had a bandage wrap on his right foot and ankle. The same day, Nurse York notified Martin of Hampton's right foot/ankle injury resulting from the prior basketball incident:

> Nursing notified this provider that pt hurt his right ankle/foot while playing basketball last week. Nurse reported slight edema, no ecchymosis, +2 pedal pulses. Pt complains that it feels numb down to his toes and he has been using crutches and wrapped the site with ACE bandaids.

Martin ordered x-rays to rule out a fracture of Hampton's right foot/ankle. The x-ray showed Hampton's right foot to be normal, with no fracture, dislocation, or soft tissue swelling. Martin was never involved in, and never received, any request from Hampton to move to a cell on a lower tier.

---

[3] The State Defendants submit, and Hampton does not dispute, that if he had changed his mind after his appointment with Nurse Block, he could have requested a low tier restriction through a Health Service Request ("HSR"). Since Hampton maintains that he *did* submit such a request during the July 5, 2019 appointment with Nurse Block and it was denied, perhaps it would be more accurate to say that Hampton knew he could restate his request for a low tier restriction through an HSR.

Case 2:22-cv-00401-JPS   Filed 03/13/24   Page 7 of 23   Document 75

On July 11, 2019, Nurse York saw Hampton for a follow-up visit. Hampton was using crutches. Hampton stated that he still could not put weight on his right foot/ankle as it was too painful, that he could not wiggle his toes, and that his toes were numb. Nurse York assessed that Hampton had the bandage wrap on his right foot/ankle too tight, causing his foot to swell behind the toes. ECF No. 46-1 at 8.

### 3.3    July 16, 2019 Fall and HSU Visit

On July 16, 2019, Hampton fell down thirteen to fifteen stairs while attempting to traverse down the flight of stairs with crutches. Later that day, Taplin received a call that Hampton fell down some steps and was requesting to go to the HSU. Hampton was brought into the HSU in a wheelchair. He complained that his right foot—the foot he had previously injured and reinjured—hurt. He stated that he was coming down the stairs with his crutches when one of them slipped, causing him to fall.

Upon assessing Hampton, Taplin did not observe any redness, swelling, scrapes, or cuts, but observed that Hampton exhibited a limited range of mobility in his right ankle.[4] Taplin also had Martin examine Hampton. Looking at Hampton's right foot, ankle, and heel, Martin agreed with Taplin that there was nothing to note; Martin found no redness, swelling, or cuts, or any other emergent findings. Taplin advised Hampton to rest, elevate, and ice his foot.

---

[4] The State Defendants leave out the fact that Taplin observed that Hampton had a limited range of mobility, but Martin includes this fact. ECF No. 56 at 3. Hampton's medical records show that Taplin made this assessment. ECF No. 46-1 at 7 (describing range of motion as "limited").

Case 2:22-cv-00401-JPS   Filed 03/13/24   Page 8 of 23   Document 75

The same day, Taplin also requested that Moore look at Hampton's foot, and Moore did so. Moore did not observe any swelling or bruising to Hampton's right foot, ankle, or heel.[5] No other injuries were reported from the fall. Moore instructed Hampton that he was not to navigate the stairs with his crutches and placed a low tier restriction for one week. Moore also placed an order for x-rays and indicated that she would follow up after reviewing the x-ray results.

The July 16, 2019 visit was the only time during Martin's involvement with Waupun that Martin physically examined Hampton. Likewise, Taplin only saw Hampton for his right foot/ankle injury on July 16, 2019; he did not see or treat Hampton for the injury prior to July 16, 2019. He was not aware that Hampton's ankle had previously been injured or that he was on crutches without a tier restriction. Taplin did not receive any HSR from Hampton asking for a low tier restriction and did not deny Hampton a restriction requiring him to be housed on a lower tier while he was on crutches.

Similarly, Moore did not see or treat Hampton for his right foot/ankle injury prior to July 16, 2019. Moore was not aware that Hampton was on crutches without a low tier restriction until after his fall on July 16, 2019.

---

[5]The State Defendants leave out the fact that Moore observed that Hampton had a limited range of mobility. Hampton's medical records show that Moore made this assessment. ECF No. 46-1 at 23 (describing range of motion as "very limited").

Case 2:22-cv-00401-JPS   Filed 03/13/24   Page 9 of 23   Document 75

Meli did not provide any personal care or treatment to Hampton. She did not know about his ankle injury on July 3, 2019 and was not aware of his accident, injury, or any of his complaints or concerns until July 23, 2019.

### 3.4    Subsequent Events

On July 22, 2019, Moore reported that an x-ray of Hampton's right foot, ankle, and heel showed that everything was normal. Due to these results, Moore discontinued, as of that same date, Hampton's use of crutches, the low bunk restriction, the low tier restriction, and the need for his meals to be brought to his cell. ECF No. 46-1 at 21. Nurse York sent Hampton a letter advising him of the normal x-ray results and that Moore, upon reviewing these results, had discontinued his use of crutches, the low bunk restriction, the low tier restriction, and the need for his meals to be brought to his cell. *Id.* at 33. The State Defendants submit, and Hampton does not dispute, that at this time there was not a need for a low tier restriction.

On July 23, 2019, Moore received an HSR from Hampton in which he complained of his toes being numb and about his crutches being taken away. Moore responded to Hampton by telling him that his x-ray was normal, that he could walk, and that it was in fact good for him to walk on his foot. ECF No. 46-1 at 45.

On July 23, 2019, Meli received an Information Request from Hampton stating that, after "several request[s]" to be moved to a lower tier because he was on crutches and wanted to avoid a fall down the stairs, he was denied, and that he thereafter "actually" fell down the stairs. *Id.* at 46.

Page 10 of 23

Hampton stated that, at the time of writing his Information Request, he was on the lower tier[6] and was contacting Meli "for ICE [Institutional Complaint Examiner] purposes." *Id.*

Meli responded to Hampton that "after reviewing [his] file on July 5, 2019," she found that he had informed Nurse Block that he was on the second tier and "did not want to move cells." *Id.* Meli also noted that Hampton's medical records from July 16, 2019 documented that while he did suffer a fall, he did not experience any redness, swelling, scrapes, or cuts on his right ankle.[7]

---

[6]The one-week low tier restriction that Moore put in place on July 16, 2019 and discontinued on July 22, 2019 would have expired on its own anyways on or by July 23, 2019. But Hampton was still in lower tier housing as of July 23, 2019; when he was moved out of lower-tier housing is unclear. But since Hampton stipulates that, as of July 22, 2019, there was not a need for a low tier restriction, ECF No. 44 at 9, he does not appear to challenge discontinuation of the low tier restriction on July 22, 2019. Rather, he appears to challenge not having been given a low tier restriction *before* the July 16, 2019 fall. Accordingly, when the low tier restriction was removed and when that removal took effect are immaterial facts.

[7]Hampton purports to dispute the facts stated in this paragraph on the basis that he "never contacted [Meli] about keeping [him] on the first floor because [he] was already on the first floor" and instead was contacting her regarding his crutches being taken away and his meals no longer being brought to his cell. ECF No. 45 at 2. This is not a genuine dispute because it is essentially consistent with the facts as the State Defendants have submitted them and with the record.

The parties also stipulate that:

Meli . . . received and responded to two of Hampton's Information Requests and consulted on one of his Inmate Complaints regarding low tier requests. Meli's responses were from July 23 through July 29, 2019. At that time, she reviewed Hampton's medical file and she became aware that he was seen on July 3[, 2019] and the nurse asked him about which tier he was on and he informed the nurse he was on the second tier but he said he did not want to move cells.

Case 2:22-cv-00401-JPS   Filed 03/13/24   Page 11 of 23   Document 75

On July 24, 2019, Moore saw Hampton for a follow-up visit related to right ankle pain. Hampton asked for his meals to be brought to him in his cell. Moore encouraged Hampton to be as active as possible. She planned to continue to monitor his right foot and stated that no restrictions were warranted at that time.

It was Moore's professional opinion that Hampton's July 22, 2019 x-ray results were normal, that crutches were no longer required, that the aforementioned restrictions were no longer required, and that it would in fact be good for Hampton to walk on his foot and be as active as possible. She maintained those instructions throughout his follow-up appointments and in response to Hampton's July 23, 2019 HSR.

4.      **ANALYSIS**

The State Defendants—Moore, Taplin, and Meli—move for summary judgment on Hampton's Eighth Amendment claim that they "allegedly fail[ed] to house him on the first tier while he was on crutches between July 3, 2019 and July 16, 2019," on the basis that none of them "was aware of his need or request for a first-tier restriction" and accordingly could not have been deliberately indifferent for failing to respond. ECF No. 43 at 1, 3. They also argue in the alternative that they cannot be held liable

---

ECF No. 44 at 9. The State Defendants appear to incorrectly refer to Hampton's July 5, 2019 encounter with Nurse Block; Hampton has not pointed out the error. Hampton's medical records do not show that the issue of a low tier restriction was discussed at all during Hampton's July 3, 2019 encounter with Nurse Ahlborg. *See* ECF No. 46-1 at 14–15. The parties do not discuss the content of Hampton's July 29, 2019 Information Request to Meli, so the Court presumes it is immaterial. These stipulations of fact have been disregarded.

for any violation of Hampton's constitutional rights because they had no personal involvement in any such alleged violation. *Id.* at 5 (citing *Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir. 2010)).[8]

Martin also moves for summary judgment on Hampton's Eighth Amendment claim of deliberate indifference to a serious medical need. ECF No. 52 at 4. Martin frames the claim as premised on two theories: "(1) that [he] acted deliberately indifferent by failing to accommodate Hampton's alleged request for a cell on a lower level . . . ; and (2) that [he] failed to instruct Hampton on the use of crutches on stairs." *Id.* Martin argues that he is entitled to summary judgment on either theory because he "was not Hampton's primary treating nurse practitioner at the times relevant to this lawsuit and, therefore, [his] role and related knowledge of Hampton's medical conditions was extremely limited." *Id.* He also stresses that he "was never personally involved in receiving or responding to any request from Hampton for a cell on a lower level . . . ." *Id.* Accordingly, he argues, he "lacked the requisite personal involvement and knowledge to meet the high hurdles under the deliberate indifference standard." *Id.* at 8.

---

[8]The State Defendants argue in their reply brief that "Plaintiff did not address [their] qualified immunity argument[,] thereby conceding it" and further that they are entitled to qualified immunity as a matter of law. ECF No. 71 at 4. However, the State Defendants opening brief does not raise qualified immunity, so they are the ones who conceded the point. *Bakery Bling v. Matrix Packaging Mach. LLC*, No. 21-CV-1399-JPS, 2022 WL 17251983, at *10 (E.D. Wis. Nov. 28, 2022) ("A party forfeits an argument that it fails to properly develop." (citing *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014)). The Court will not examine the State Defendants' late-invoked qualified immunity defense.

For the reasons stated below, both the State Defendants' and Martin's motions for summary judgment will be granted. After laying out the applicable legal standard, the Court addresses each motion in turn.

### 4.1 Eighth Amendment Standard

Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To prove that Defendants violated his rights under the Eighth Amendment, Hampton must present evidence establishing that he suffered from "'an objectively serious medical condition'"[9] and that Defendants were "'deliberately, that is subjectively, indifferent'" to that condition. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### 4.2 The State Defendants' Motion for Summary Judgment

The State Defendants argue that they are "entitled to summary judgment because they had no knowledge of Hampton's first-tier restriction request" or of his "medical need" due to being "on crutches without a first-tier restriction." ECF No. 43 at 5. Hampton counters that Martin, as of July 8, 2019, was aware that Hampton was using crutches; he

_____

[9] No Defendant contends that Hampton did not have a serious medical condition or need. Accordingly, the Court will assume without deciding that Hampton satisfies this first prong of the deliberate indifference standard.

implies that Martin's knowledge should be imputed onto the State Defendants. ECF No. 70 at 1 ("[T]here is no possible way to not have known [that he needed] a low tier restriction"); *id.* at 2 ("Hampton ha[s] shown at least one Defendant was indeed aware of the situation/injury . . . [and] of the risks/dangers of me being on crutches & trying to go up & down stairs."); *see also* ECF No. 72 at 2–3 (arguing that "prison health officials often come together to provide some sort of health care plan for patients" and citing "DAI Policy #500.30.18," which is not in evidence at summary judgment, but which allegedly provides that "collaboration between nurses & ACPs is expected as it relates to care & treatment of patients").

Hampton also disputes the State Defendants' contention that Nurse Block asked him whether he wanted to be moved to a lower tier on July 5, 2019 and that he refused; he argues that he did, in fact, ask for a low tier restriction at that time and that he has raised a question of credibility as to whose version of events is to be believed. ECF No. 70 at 2.

The Court is constrained to grant the State Defendants' motion. Hampton has not introduced any evidence to contradict the State Defendants' position that neither Moore, Taplin, nor Meli personally knew about his injury, his use of crutches, or his being housed on an upper tier until July 16, 2019, the day he fell down the stairs and subsequently was treated in the HSU. He has stipulated that Taplin and Moore did not treat him until the time of his accident on July 16, 2019 and that Meli never treated him. *See supra* Section 3.3. There are no facts from which the Court could infer that any provider who saw Hampton in the HSU on any date prior to July 16, 2019 told any State Defendant what they observed about

Page 15 of 23

him and whether those observations might support a low tier restriction. Neither Taplin nor Moore would have become personally aware of Hampton's condition and his potential need for a lower tier restriction until July 16, 2019, at which time he *was* given a lower tier restriction. And Meli only learned of Hampton's issues after he had been granted that restriction. Even if she had known of Hampton's issues earlier, it is undisputed that Meli did not serve in a patient-facing role and did not have the authority to override the treatment decisions of any of the practitioners who saw Hampton before July 16, 2019.

The Court must also reject Hampton's contention that a dispute of fact about what happened in his July 5, 2019 encounter with Nurse Block precludes summary judgment for the State Defendants. Even assuming Hampton's version of events is true—that he did tell Nurse Block that he wanted to be moved off the second tier and that she declined to do so—he does not allege any facts that demonstrate or support an inference that Moore, Taplin, or Meli knew what Nurse Block knew. The issue is not whose story (Hampton's or Nurse Block's) to believe; the argument fails because no matter whose story the factfinder believes, there is no evidence that any State Defendant knew of the content of the conversation between Hampton and Nurse Block.[10] As it stands, the Court has no basis to conclude that any of the three State Defendants "realize[d] that a substantial

---

[10]If Hampton wanted to name Nurse Block as a Defendant, he could have done so, either through further amending his complaint—which he did once in this matter—or, if he was not initially sure of her identity, by proceeding against her as a Jane Doe defendant. He did neither.

risk of serious harm" to Hampton existed, let alone that they "disregard[ed] that risk." *Perez*, 792 F.3d at 776 (citation omitted).

The Court addresses, for the sake of completeness, a potential additional point of argumentation not covered in the parties' briefs. Hampton's operative complaint alleges that, on July 7, 2019, all four Defendants "provided . . . [him] with navigational instructions for using crutches to travel up or down stairs." ECF No. 10 at 10–11; *see also* ECF No. 14 at 2 (screening order noting that "Meli, Taplin, Martin and Moore" provided instructions). Hampton then alleges that Defendants—after instructing him on the use of crutches—didn't impose a lower tier restriction despite having the authority to do so. ECF No. 10 at 11. Hampton goes on to state that these instructions were provided but not documented in his medical chart. *See id.* at 12. However, he later suggests that he perhaps *was not* given such instructions, pointing out that, in affirming the dismissal of his inmate complaint, the DOC Secretary noted that "education on navigating stairs with crutches should have been provided and documented." *Id.* at 7 (quoting ECF No. 10-1 at 7).

To the extent that Hampton is arguing that any of the named Defendants knew or should have known that a lower tier restriction was appropriate by virtue of having earlier instructed him on using crutches on the stairs, this argument fails for essentially the same reasons explained in this section. First of all, Hampton has not developed any evidentiary record around this allegation. There is nothing in the record before the Court that supports a finding that any of the named Defendants instructed Hampton on using crutches—or didn't—nor is there anything showing that, if

another DOC staff person did so, that staff person informed any named Defendant of having provided such instructions.

Second, none of the State Defendants was present on the date when the crutches instruction allegedly occurred. According to the evidentiary record, there was no July 7, 2019 encounter. If the operative complaint means to refer to the July 3, 2019 or July 5, 2019 encounters, then there is still no evidentiary support for the contention; no Defendant was present at either of those dates and therefore the Court cannot conclude that any Defendant provided such instruction at those times. There is no allegation that any Defendant knew that anyone else instructed Hampton on the use of crutches at either time.

The DOC Secretary's finding that "education on navigating stairs with crutches should have been provided and documented," ECF No. 10 at 7, works against Hampton in his burden of proving that Defendants had notice of his medical need. And whether Defendants were deliberately indifferent for not providing Hampton instruction on using his crutches is not the claim that he has pressed in this case.

For all these reasons, Hampton's Eighth Amendment claim against the State Defendants fails on the deliberate indifference prong, or alternatively fails for lack of personal involvement in the alleged violation. *Minix*, 597 F.3d at 833–34 (citing *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2009)). The State Defendants accordingly are entitled to summary judgment.

### 4.3    Martin's Motion for Summary Judgment

Martin argues that he is entitled to summary judgment on Hampton's Eighth Amendment claim because, although he had some interactions with Hampton, he "was not personally involved in any decision regarding Hampton's cell placement, and Hampton refused the accomodation [sic] anyway." ECF No. 52 at 4. Without substantively addressing Hampton's proffered dispute of fact as to whether he declined a lower tier restriction when Nurse Block offered him one on July 5, 2019, Martin contends that "even if Hampton's own refusal did not bar his claim, which it does, this claim is inappropriately targeted at Martin" because "Martin was never presented with an opportunity to order Hampton to a lower tier cell." *Id.* at 5. Accordingly, Martin argues, Hampton's claim fails for lack of personal involvement and/or deliberate indifference by Martin. *Id.* at 5–6.

In opposition, Hampton points to the fact that he was placed on crutches on July 3, 2019. ECF No. 70 at 1 ("[T]here is no possible way to not have known for a low tier restriction."). He argues that the need for a low tier restriction would have been readily apparent to his treating clinician(s) and would have prompted any clinician to order such a restriction. *Id.* ("Any doctor or nurse would see the dangers in navigating up & down stairs while on crutches, and would have seen to it that . . . Hampton[] was moved to a bottom tier. Regardless if I asked to be moved or not, it is their professional right and responsibility to act in the best favor of the patient's health & safety."). As summarized above, Hampton also appears to argue that any other non-party HSU provider's knowledge of his alleged need for

a lower tier restriction should be imputed to all Defendants, including Martin. *Id.* at 2; *see also* ECF No. 72 at 2–3.

The Court cannot adopt Hampton's arguments and is constrained to grant summary judgment to Martin. While Martin was put on notice that Hampton was using crutches, due to reading Nurse York's July 8, 2019 note and then physically examining Hampton on July 16, 2019, this does not establish that Martin knew that Hampton was housed on an upper level or that Hampton wished to be housed on a lower level. There is no evidence that Hampton raised a lower tier restriction request to Martin on either date. Notwithstanding the dispute of fact as to what was said between Nurse Block and Hampton on July 5, 2019, Martin was not privy to that conversation so was not made aware of Hampton's lower tier restriction request at the time of or after that conversation. On its own, the fact that Martin knew that Hampton was using crutches does not support a finding that he, by extension, knew that Hampton was using them in a way likely to lead to injury or was otherwise facing some risk in navigating the prison with those crutches. The Court therefore cannot conclude that Martin "subjectively . . . kn[e]w of facts from which he could infer that a substantial risk of serious harm exist[ed], [nor that] he actually dr[e]w the inference." *Whiting*, 839 F.3d at 662 (citing *Farmer*, 511 U.S. at 837, and *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc), *as amended* (Aug. 25, 2016)).

To the extent that Hampton raises an Eighth Amendment deliberate indifference claim premised on any failure by Martin to train Hampton "on the use of crutches while traversing stairs," Martin argues that "there is no evidence [that he] was ever aware that Hampton was not instructed on the

use of crutches on stairs . . . ." ECF No. 52 at 6. He stresses that nothing in Hampton's medical records prior to July 8, 2019—when Martin became aware of Hampton's reinjury but at which time Martin did not physically examine Hampton—"could have plausibly alerted Martin to the fact that Hampton was unaware of how to manage the stairs with his crutches or that Hampton was never instructed on the use of crutches on stairs in the first place." *Id.* at 7.

Hampton has not responded to these arguments (and as the Court previously noted, he does not appear to be litigating an Eighth Amendment claim that any Defendant was deliberately indifferent for failing to train him on using crutches). Also as discussed previously, the parties have not developed a factual record around whether any training on the use of crutches was or was not provided; it bears noting that screening order in this case did state that Hampton was trained on the use of crutches. ECF No. 14 at 3. In any event, Martin is entitled to summary judgment on any claim that he was deliberately indifferent by failing to train Hampton on the use of crutches, for the same reason that he is entitled to summary judgment on the claim of failure to grant a low tier restriction. There is nothing in the record to suggest that Martin was aware that Hampton needed training on using crutches to traverse stairs—although Martin knew that Hampton was using crutches, his brief interactions with Hampton and his medical records gave him no reason to suspect that Hampton required such training or would be at risk of injury without it.

It is unfortunate that Hampton's July 2019 fall exacerbated his right ankle injury. But ultimately, Hampton's position seems to be that all

Defendants were required at all times to spot and manage any and all risks Hampton might face in using crutches. But that position does not meet the stringent Eighth Amendment deliberate indifference standard. *See Whiting*, 839 F.3d at 662 ("The requirement of subjective awareness tethers the deliberate-indifference cause of action to the Eighth Amendment's prohibition of cruel and unusual punishment; 'an *inadvertent* failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" (quoting *Estelle*, 429 U.S. at 105)). Hampton has not met that standard.

5. **CONCLUSION**

For the above-stated reasons, both the State Defendants' and Martin's motions for summary judgment will be granted, and this case will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants Chrystal Meli, Mary A. Moore, and Brian Taplin's motion for summary judgment, ECF No. 42, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Robert J. Martin's motion for summary judgment, ECF No. 51, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice.**

The Clerk of Court is directed to enter judgment accordingly.

Case 2:22-cv-00401-JPS   Filed 03/13/24   Page 22 of 23   Document 75

Dated at Milwaukee, Wisconsin, this 13th day of March, 2024.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.